UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| HASSAN AHMED, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 18-cv-10847-ADB |
| MASSACHUSETTS BAY | * | |
| TRANSPORTATION AUTHORITY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE

BURROUGHS, D.J.

Plaintiff Hassan Ahmed ("Plaintiff"), an employee with the Massachusetts Bay Transportation Authority ("Defendant"), filed this action against his employer alleging discrimination and retaliation in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Massachusetts General Laws Chapter 151B. [ECF No. 1]. Presently before the Court is Defendant's motion for summary judgment. [ECF No. 37]. For the reasons set forth below, Defendant's motion, [ECF No. 37], is <u>GRANTED</u> in part and <u>DENIED</u> in part. In addition, Plaintiff has filed a motion to strike the affidavit of Daniel Kazakis from the summary judgment record, [ECF No. 45], which Defendant opposes, [ECF No. 47]. The Court has not relied upon the affidavit in reaching its findings on summary judgment, therefore the motion to strike, [ECF No. 45], is <u>DENIED</u> as moot.

## I.   BACKGROUND

### A.   Factual Background

Except as otherwise noted, the following facts are not in dispute.[1]  Plaintiff is a practicing

Muslim and a Black male of Sudanese descent.  [ECF No. 39 ¶ 3 ("SOF")].  On February 9,

2016, he began working for Defendant as a part-time streetcar motorperson on the Green Line,

[id. ¶ 4], and started an eight-week training program that all new motorpersons are given at the

start of their employment, [id. ¶ 5].  As a new employee, Plaintiff was given copies of

---

[1] Defendant contends that Plaintiff's "Statement of Material Facts in Dispute" ("Plaintiff's Statement") fails to comply with Local Rule 56.1.  [ECF No. 48 at 1 n.1].  Local Rule 56.1, applicable to motions for summary judgment, provides that "[a] party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."  Local Rule, D. Mass. 56.1.  Plaintiff's Statement, [ECF No. 44], while supported by record cites, fails to identify genuine facts in dispute.  "[W]hat Plaintiff has actually filed is its own version of the facts in narrative form.  More to the point, Plaintiff has made no attempt to highlight for the Court those facts asserted by [defendant] which it contends are in dispute versus those facts that are undisputed."  Shri Gayatri, LLC v. Charter Oak Fire Ins. Co., 206 F. Supp. 3d 684, 688 n.1 (D. Mass. 2016).  In some cases, Plaintiff provides additional facts that do not appear to be in dispute (e.g., the race of Plaintiff's training instructor), while in other cases, Plaintiff simply repeats facts presented by Defendant that do not appear to be in dispute (e.g., Plaintiff's start date with the Defendant, the name of Plaintiff's training supervisor).  Local Rule 56.1 is "designed to function as a means of 'focusing a district court's attention on what is—and what is not—genuinely controverted.'"  Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)).  Plaintiff's Statement has failed to assist the Court in identifying facts in dispute.

Plaintiff submitted a second document, "Responses to [Defendant's] . . . Statement of Undisputed Material Facts" ("Plaintiff's Responses").  [ECF No. 44-16 ("SOF Response")].  This document identifies facts in dispute by responding to those paragraphs in Defendant's Statement of Facts that Plaintiff disputes.  See, e.g., [id. at 3 (disputing ¶ 15 of Defendant's Statement of Facts].  Accordingly, the Court will consider any fact not disputed within Plaintiff's Responses to be admitted.  See Local Rule, D. Mass. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); see also Hernandez, 486 F.3d at 7 ("In the event that a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated.").

Defendant's policies, "including, among others, the General Rules, Discipline Policy, and Attendance Policy." [Id. ¶¶ 6–7].

### 1.   Complaints About Coworkers and Supervisors

Ahlam Samrin ("Samrin") was assigned as a training instructor for Plaintiff and two other trainees, Richard O'Shea ("O'Shea") and Armand Ivy ("Ivy"). [SOF ¶ 8]. On March 15, 2016, Ivy submitted a complaint about Samrin's teaching style and tone, though the complaint did not make any reference to discrimination or sexual harassment. [Id. ¶¶ 10–11]. Defendant investigated the complaint and took statements from Samrin, Plaintiff, and O'Shea. [Id. ¶ 12]. Plaintiff was advised that there was "no retaliation at the MBTA or in training." [Id. ¶ 13 (quoting ECF No. 39-1 at 97)]. Ivy ultimately resigned, citing stress and pressure from Samrin's training, as well as personal concerns about his safety despite the policy of no retaliation. [Id. ¶ 15; ECF No 44-16 ("SOF Response") at 3 (quoting ECF No. 39-2 at 5, Ivy's resignation e-mail)]. On March 17, 2016, Plaintiff was assigned to a new training instructor, and he completed his training on April 8, 2016. [SOF ¶¶ 16–17].

On April 4 and April 8, 2016, Plaintiff submitted complaints about Samrin. [SOF ¶¶ 18, 23]. In both letters, Plaintiff mentioned comments that Samrin had made to him when he was training with her, including comments about "Muslim terrorists." [Id. ¶¶ 21, 24; ECF No. 39-2 at 9 (April 4th letter); ECF No. 39-2 at 12 (April 8th letter)]. During his deposition, Plaintiff testified that at a training on emergency evacuations, Samrin said to him, "I hope you are not one of those Muslims blowing shit up." [SOF ¶ 25]. In his April 8th letter, Plaintiff reported that, during training, Samrin made the following comment: "When you look at me, do you think of me as one of those girls in a bikini. I bet if I give you my number you'll be calling me all the time asking to go out." [Id. ¶ 26]. During his deposition, Plaintiff testified that, after asking

whether Plaintiff was single, Samrin told him, "I bet you if you got my phone number you would want to bang me." [Id. ¶ 27]. He also testified that she touched his inner thigh on several occasions, [id. ¶ 29], and caused her breasts to come into contact with his body, [id. ¶ 30]. Defendant's Office of Diversity and Civil Rights ("ODCR") investigated the complaints raised in Plaintiff's April 4th and April 8th letters, and interviewed witnesses Plaintiff identified in the letters. [Id. ¶¶ 31–32]. ODCR completed its investigation on May 4, 2016, telling Plaintiff that it found insufficient evidence of a violation of Defendant's anti-discrimination/harassment policy and was therefore entering a "no cause" finding. [Id. ¶ 33].

On May 19, 2016, Plaintiff and a coworker, Paul Cyr ("Cyr"), had an argument, leading Plaintiff to file a complaint stating that he was afraid Cyr was going to hit him. [SOF ¶ 34; SOF Response at 6; ECF No. 39-2 at 56 (complaint)]. Plaintiff did not allege that Cyr made any discriminatory remarks or that Cyr was retaliating against Plaintiff for his prior complaints about Samrin. [SOF ¶ 35].[2] On June 1, 2016, Plaintiff submitted a letter about the incident, which also did not reference discriminatory remarks or retaliation. [Id. ¶ 38; ECF No. 39-3 at 4].[3] That same day, Plaintiff met with Cyr, Annette Gonsalves-Byner ("Gonsalves-Byner"), who was a

---

[2] Plaintiff disputes this, but cites only his complaint in support. [SOF Response at 6 (citing ECF No. 1 ¶ 32)]. Disputed facts must be supported by reference to record evidence. See Local Rule, D. Mass. 56.1 ("A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."). In his complaint, Plaintiff states that Cyr made derogatory comments but does not allege that these comments were discriminatory or made in retaliation for Plaintiff's prior complaints about Samrin. [ECF No. 1 ¶ 32]. During his deposition, however, Plaintiff testified that Cyr and Samrin were friends and that Cyr knew about the complaints that Plaintiff had made against Samrin. [ECF No. 44-1 at 41].

[3] Again, Plaintiff disputes this, arguing that Cyr bullied him and was aggressive and disrespectful towards him, [SOF Response at 7], however, Plaintiff does not claim that Cyr made a discriminatory remark or that he was retaliating against Plaintiff, see [id.].

Supervisor of Light Rail Operations, and a union representative to discuss the May 19th incident. [SOF ¶ 36].  Plaintiff again did not make any allegations about discrimination or retaliation during that meeting.  [Id. ¶ 37].

On June 9, 2016, Plaintiff and Cyr had another disagreement.  [SOF ¶ 39].  Plaintiff filed a new complaint the next day, reporting that Cyr refused to communicate when Plaintiff tried to alert him to a potential problem with a passenger who was laying down in the train.  [Id. ¶ 41; ECF No. 39- 3 at 6].  This complaint also did not make any allegations of discrimination or retaliation.  [SOF ¶ 40].  During a July 12, 2016 meeting with Plaintiff, Gonsalves-Byers, Cyr, and a union representative, Plaintiff likewise did not make any allegations of discrimination or retaliation.  [Id. ¶¶ 42–43].  That same day, Plaintiff submitted a letter to Defendant outlining the incident and complaining about Cyr.  [Id. ¶ 44; ECF No. 39-3 at 14].  The letter did not make any allegations of discrimination or retaliation.  [SOF ¶ 45; ECF No. 39-3 at 14].[4]

Plaintiff testified that on his first day on the job, Inspector Robert Carvalho ("Carvalho") said he had heard about Plaintiff and did not appreciate the way Plaintiff had treated Samrin. [ECF No. 44 ¶ 12; ECF No. 44-1 at 27].  On July 29, 2016, Plaintiff submitted a letter to Defendant about his interactions with both Cyr and Carvalho, noting that Carvalho had criticized him for frequently arriving late into the station at the end of his runs.  [SOF ¶ 46; ECF No. 39-3 at 17].  In the letter, Plaintiff stated that he felt he was "being targeted as [a] black Muslim Sudanese-American."  [SOF ¶ 46; ECF No. 39-3 at 17].  Plaintiff's letter did not describe any

---

[4] Plaintiff disputes this but cites only the letter's statements regarding Cyr behaving disrespectfully towards Plaintiff without identifying discriminatory remarks.  [SOF Response at 8].

specific instance of discriminatory conduct or allege that the incidents were in retaliation for his earlier report about Samrin.  [SOF ¶ 47].[5]

On August 2, 2016, an attorney submitted a letter to Defendant on Plaintiff's behalf, stating that Plaintiff had "experienced racial, ethnic, and religious harassment in a series of incidents since March 2016, and has been threatened with retaliation as a result of these incidents."  [SOF ¶¶ 48–49].  The letter did not contain new allegations about Samrin, Cyr, or Carvalho although it did include several new allegations about other coworkers, such as a female coworker's threat to hit Plaintiff, Gonsalves-Byner's alleged statement during the July 12th meeting that she would not take any action against Cyr and that she would file a complaint against Plaintiff, and an allegation that on July 22, 2016, mechanical issues were used to set Plaintiff up for delaying a train.  [Id. ¶¶ 50–53].

On August 11, 2016, Plaintiff submitted a letter detailing other incidents with coworkers dating back to May 2016.  [SOF ¶ 54].  In addition to repeating previously reported incidents, Plaintiff stated that some coworkers yelled at him, seemingly for no reason, that Gonsalves-Byner said she would punch Plaintiff if he complained to her again, and that Cyr and Carvalho had asked him about what his attorney had written in the August 2nd letter.  [Id. ¶ 55–56; ECF No. 39-3 at 26].  In addition, Plaintiff stated that, on May 11, 2016, a female coworker threatened to hit him for complaining about Samrin.  [SOF ¶ 55; ECF No. 39-3 at 26].

On August 25, 2016, Carvalho spoke to Plaintiff in front of other employees, asking Plaintiff to stop making false allegations about him.  [SOF ¶ 60].  Plaintiff has alleged generally that Cyr and Carvalho made discriminatory statements to him in 2016, including a comment

---

[5] Plaintiff disputes this, citing the letter.  [SOF Response at 9].

from Carvalho about Muslims "killing each other" and a statement from Cyr that Plaintiff should "go back where [he] came from."  [Id. ¶¶ 61–62].

On November 23, 2016, Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), which Defendant received on December 5, 2016.  [SOF ¶¶ 109–10].  Plaintiff's MCAD complaint alleged that "he (i) was being discriminated against on the basis of his race, religion, and national origin; (ii) had been sexually harassed by Ms. Samrin; and (iii) was being retaliated against for complaining about discrimination and sexual harassment."  [Id. ¶ 111].

In 2017, Plaintiff complained to Defendant about several interactions with his coworkers.  [SOF ¶¶ 112–20].

### 2.   Disciplinary Actions

In August 2016, Plaintiff missed seven days of work in order to serve as a translator for his father, who was hospitalized.  [SOF ¶¶ 65–66].  Plaintiff was not preapproved for this leave and was not eligible to take leave under the Family and Medical Leave Act ("FMLA") because he had not worked enough hours.  [Id. ¶¶ 67–69].  As a result, his absence was deemed an "unexcused absence" under Defendant's attendance policies.  [Id. ¶ 70].  In August 2016, Plaintiff was still on probation as a new employee and as such, any discipline for an attendance violation would be a "Final Warning."  [Id. ¶¶ 71–72].  On September 13, 2016, Plaintiff was issued a Final Warning due to his unexcused absences ("September 2016 Disciplinary Action").  [Id. ¶ 74; ECF No. 39-4 at 14 (copy of warning)].  As a probationary employee, Plaintiff was not eligible to dispute the Final Warning through the grievance process, but he did seek a waiver of the disciplinary action with the help of Inspector Ivy Payne ("Payne").  [SOF ¶¶ 75–76].  The waiver was not granted and the September 2016 Disciplinary Action was not rescinded.  [Id.

¶ 77].[6]  Waivers are granted infrequently, particularly when submitted by probationary

employees.  [Id. ¶ 78].

In September 2016, Plaintiff was absent from work for three days, this time due to a

recurring illness.  [SOF ¶ 79].  He was not pre-approved for the absence and the missed days

were therefore "unexcused absences" under Defendant's attendance policy.  [Id. ¶¶ 80–81].  On

October 18, 2016, Plaintiff was issued a one-day administrative suspension for the unexcused

absence ("October 2016 Disciplinary Action").  [Id. ¶ 82].  This disciplinary action was later

rescinded after Plaintiff's application for disability leave was approved.  [Id. ¶¶ 83–84].

On November 8, 2016, Plaintiff was scheduled to work two shifts, one ending at

7:24 p.m. and the second beginning at 10:08 p.m.  [SOF ¶ 85].  Plaintiff visited his father, who

was a patient at a local hospital, between the shifts and was late returning for his second shift.

[Id. ¶ 86].  Under Defendant's attendance policy, an employee is deemed "AWOL," or absent

without leave, when he or she "fails to appear at his or her scheduled starting/reporting time and

fails to notify his or her immediate supervisor or [human resources] at least one hour before

his/her scheduled starting/reporting time that he or she will be Absent from Duty or Tardy."  [Id.

¶ 87; ECF No. 39-4 at 22–29 (attendance policy)].  Plaintiff did not arrive on time and did not

call one hour before his reporting time.  [Id. ¶ 88].[7]  As a result, Plaintiff was AWOL under the

---

[6] Plaintiff disputes whether the September 2016 Disciplinary Action was rescinded.  [SOF
Response at 13].

[7] Plaintiff "disputes" this fact by stating that he called fifteen to twenty minutes before his
reporting time to state that he would be late and that he arrived two minutes late to the shift.
[SOF Response at 15].

terms of the attendance policy and, on November 23, 2016, was issued a one-day administrative suspension ("November 2016 Disciplinary Action").  [Id. ¶ 90].[8]

On December 12, 2016, Plaintiff filed a grievance to challenge the November 2016 Disciplinary Action, alleging that it was based on discriminatory and retaliatory intent but without contesting the factual basis for the action.  [SOF ¶¶ 91–92].  A union representative investigated the matter and presented evidence on Plaintiff's behalf at a hearing.  [Id. ¶ 93]. Defendant's labor relations counsel denied the grievance.  [Id. ¶ 94].  The union representative declined to appeal the decision, telling Plaintiff in a letter that, "[b]ased on the evidence you presented with your grievance and my investigation, I have determined that we can not [sic] prevail with your grievance at the next level."  [Id. ¶ 98; ECF No. 39-5 at 56].

Plaintiff was absent from work without leave from September 19–22, 2017 due to a dental procedure.  [SOF ¶¶ 100–01].  As a result, on October 4, 2017, he was issued a three-day administrative suspension under Defendant's attendance policy ("October 2017 Disciplinary Action").  [Id. ¶ 104].  Plaintiff filed a grievance and submitted an application for disability leave for the September 2017 absence.  [Id. ¶¶ 105–06].  His application was approved and the October 2017 Disciplinary Action was rescinded.  [Id. ¶¶ 107–08].

### 3.    Promotion to Full-Time Status

Green Line employees choose their work schedule every three months, based on seniority.  [SOF ¶¶ 122–23].  Approximately six weeks before a new schedule period, Green Line management has a meeting to determine whether any new full-time employees are needed for the next period.  [Id. ¶ 124].  Once the number of new full-time employees needed is

---

[8] Plaintiff argues instead that the reason for the disciplinary action was discriminatory and retaliatory.  [SOF Response at 15].

determined, a Green Line supervisor generates a list of all part-time Green Line employees, ranked by seniority, and checks their eligibility for promotion.  [Id. ¶ 125].  This list is prepared on "the rating date."  [Id. ¶ 126].  Pursuant to Defendant's policy, employees are ineligible for promotion if they have been issued a Final Warning within the preceding twenty-four months or if they have been issued a one-day or greater suspension within the preceding twelve months.  [Id. ¶¶ 127, 129].  Plaintiff was therefore ineligible for promotion until September 13, 2018 due to the September 2016 Disciplinary Action.  [Id. ¶ 128].[9]  Plaintiff was further ineligible for promotion for a period of twelve months due to the November 2016 Disciplinary Action, but per Defendant's policy the two periods of ineligibility ran concurrently.  [Id. ¶¶ 130–31].

Due to these disciplinary actions, Plaintiff was not included on lists of employees eligible for promotion when the lists were generated in May 2017 and October 2017.  [SOF ¶¶ 132–33, 136–37].  In January 2018, it was determined that no full-time employees were needed for the March 2018 schedule period and no list was generated.  [Id. ¶ 139].  In February 2018, Plaintiff submitted several communications to Defendant to complain about the delay in being promoted to full-time status.  [Id. ¶ 121].  By the next rating day, April 30, 2018, Plaintiff's one-year period of ineligibility under the November 2016 Disciplinary Action had expired, but his two-year period of ineligibility based on the September 2016 Disciplinary Action was still in effect.  [Id. ¶¶ 140–42].[10]  Due to a clerical error made by Payne, however, Plaintiff's name was included on the list of part-time employees eligible for promotion and, as a result, Plaintiff was

---

[9] Plaintiff disputes whether the September 2016 Disciplinary Action was rescinded.  [SOF Response at 22].

[10] Again, Plaintiff disputes whether the September 2016 Disciplinary Action was rescinded, which would have impacted Plaintiff's eligibility for promotion.  [SOF Response at 24].

promoted to full-time status beginning with the June 2018 schedule period.  [Id. ¶¶ 143–45].

Plaintiff remains a full-time employee on the Green Line.  [Id. ¶ 146].

### B.      Procedural Background

Plaintiff initiated this matter on May 1, 2018.  [ECF No. 1].  Defendant filed its answer

on September 24, 2018, [ECF No. 5], and the parties engaged in discovery, [ECF No. 11].  On

January 2, 2020, Defendant filed its motion for summary judgment.  [ECF No. 37].  Plaintiff

opposed, [ECF No. 43], and Defendant replied, [ECF No. 48].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor

of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg

v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material if its resolution might affect

the outcome of the case under the controlling law."  Cochran v. Quest Software, Inc., 328 F.3d

1, 6 (1st Cir. 2003) (citation omitted).  Thus, "[a] genuine issue exists as to such a fact if there is

evidence from which a reasonable trier could decide the fact either way."  Id. (citation

omitted).  By invoking summary judgment, "the moving party in effect declares that the evidence

is insufficient to support the nonmoving party's case."  United States v. One Parcel of Real Prop.

(Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex

Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving

party must "'affirmatively produce evidence that negates an essential element of the non-moving

party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-

moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández

v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124,

132 (1st Cir. 2000)).

Conversely, "[t]o defeat a properly supported motion for summary judgment, the

nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to

enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston,

N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted). That is,

the nonmoving party must set forth specific, material facts showing that there is a genuine

disagreement as to some material fact. One Parcel of Real Prop., 960 F.2d at 204 (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to

the party opposing summary judgment, indulging all reasonable inferences in that party's

favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is

favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v.

Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both

genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir.

2012), and the Court may discount "conclusory allegations, improbable inferences, and

unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds

Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III.    DISCUSSION

### A.    Title VII and Chapter 151B Discrimination and Retaliation Claims

Defendant seeks summary judgment on Counts I–III and VI–VIII, which bring claims

for discrimination and retaliation in violation of Title VII and Chapter 151B. [ECF No. 38 at

10].  Defendant argues that Plaintiff has failed to prove causation as to his retaliation claim or to

provide evidence that disciplinary actions against Plaintiff were pretextual and discriminatory.

[Id. at 10, 17].  Plaintiff contends that summary judgment on these counts should be denied

because there is a dispute of material fact as to whether the September 2016 Disciplinary Action

was rescinded and because Defendant's justification for the November 2016 Disciplinary Action

was pretextual.  [ECF No. 43 at 10, 11].

Retaliation and discrimination claims under Title VII and Chapter 151B are analyzed

under the same three-step burden-shifting framework set forth in McDonnell Douglas Corp. v.

Green, 411 U.S. 792 (1973); see Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511

F.3d 216, 221, 223 (1st Cir. 2007) (applying burden-shifting test to Title VII claims of

discrimination and retaliation); Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005)

(extending use of McDonnell Douglas framework to discrimination claim under Chapter 151B);

Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 50 N.E.3d 778, 800 (Mass.

2016) (applying McDonnell Douglas framework to retaliation claim under Chapter 151B).

> First, the plaintiff must make out a prima facie case of discrimination.  The burden
> then shifts to the defendant to present a legitimate, non-discriminatory reason,
> sufficient to raise a genuine issue of material fact as to whether it discriminated
> against the employee, for the employment decision.  Finally, the burden is placed
> on the plaintiff to demonstrate that the non-discriminatory reason is mere pretext
> and that the real reason was discrimination.

Quinones v. Houser Buick, 436 F.3d 284, 289 (1st Cir. 2006) (citing McDonnell Douglas, 411

U.S. at 802).  "The burden of persuasion remains at all times with the plaintiff."  Mariani-Colón,

511 F.3d at 221; Abramian v. President & Fellows of Harvard Coll., 731 N.E.2d 1075, 1085

(Mass. 2000) ("[T]he burden of proof of unlawful discrimination rests at all times with the complainant.").

The Court first addresses Defendant's argument that Plaintiff has failed to meet his burden at step one to establish a prima facie case as to his retaliation claim.  [ECF No. 38 at 17].

      1.   <u>Retaliation</u>

Under both Title VII and Chapter 151B, "[t]o make a prima facie showing of retaliation, the plaintiff must show that []he engaged in protected conduct, that []he suffered an adverse employment action, and that a causal nexus exists between the protected activity and the adverse action."  <u>Ponte v. Steelcase Inc.</u>, 741 F.3d 310, 321 (1st Cir. 2014); <u>see</u> <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 35 (1st Cir. 2009) ("[I]n order to establish a prima facie case of retaliation under [the] Massachusetts anti-discrimination statute, [a plaintiff] 'must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse job action.'" (quoting <u>Thompson v. Coca-Cola Co.</u>, 522 F.3d 168, 181 (1st Cir. 2008))).  Retaliation requires a "but-for causal connection between the protected activity and the adverse employment action."  <u>Posada v. ACP Facility Servs., Inc.</u>, 389 F. Supp. 3d 149, 158 (D. Mass. 2019) (citing <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 362 (2013)).  "In other words, a plaintiff must show that the adverse action would not have occurred in the absence of the protected activity."  <u>Soni v. Wespiser</u>, 404 F. Supp. 3d 323, 332 (D. Mass. 2019)  In addition, "[t]o defeat summary judgment in a retaliation case, 'a plaintiff must point to some evidence of retaliation by a

pertinent decisionmaker.'" Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012) (quoting Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997)).

Plaintiff testified that he gave Payne a copy of the August 2, 2016 letter from his attorney, which said that Plaintiff had "experienced racial, ethnic, and religious harassment in a series of incidents since March 2016, and ha[d] been threatened with retaliation as a result of these incidents." [SOF ¶¶ 48–49; ECF No. 44-1 at 37 (Plaintiff's testimony regarding giving Payne a copy of the letter)]. He suggests that, because Payne knew about the complaint in early August 2016, her decisions to implement disciplinary actions against him in September and November 2016 were retaliatory. [ECF No. 43 at 17]. "The First Circuit has made clear, however, [that] temporal proximity 'is merely one factor relevant to causation.'" Soni, 404 F. Supp. 3d at 332 (quoting Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 25 (1st Cir. 2014)).

Plaintiff must also show that retaliation was not just *a* cause leading to the disciplinary actions, but that is was the primary, or motivating cause. "The causation element of a Title VII retaliation claim is not satisfied by evidence that retaliation was one motivating factor in the adverse action." Roy v. Correct Care Sols., LLC, 914 F.3d 52, 70 (1st Cir. 2019). Similarly, under Chapter 151B, "the employer's desire to retaliate against the employee must be shown to be a determinative factor in its decision to take adverse action." Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 530 (Mass. 2011) (citing Abramian, 731 N.E.2d 1075). Plaintiff has admitted to facts that support the Defendant's proffered reasons for both the September and November 2016 Disciplinary Actions: he failed to request prior approval for a seven-day absence in mid-August 2016 (September 2016 Disciplinary Action), [SOF Response at 12], and failed to adhere to the attendance policy when he realized he was going to be late for a shift in early November 2016

(November 2016 Disciplinary Action), [id. at 14–15].[11]  His unexcused absence in mid-August

and failure to adhere to the attendance policy in early November occurred after what was then his

most recent complaint to Defendant, dated August 2, 2016.  As a result, "the undisputed

intervening acts of misconduct sever the causal connection (if any) between the protected

conduct and the adverse employment decision."  Furtado v. Standard Parking Corp., 820 F.

Supp. 2d 261, 273 (D. Mass. 2011).  Plaintiff has therefore failed to demonstrate that retaliation

was the motivating or determinative cause of Defendant's disciplinary actions.  See Roy, 914

F.3d at 70; Psy-Ed Corp., 947 N.E.2d at 530.

Because Defendant has "affirmatively produce[d] evidence that negates an essential

element" of Plaintiff's claim, summary judgment is GRANTED as to Counts II, III, VII, and

VIII.  Ocasio-Hernández, 777 F.3d at 4–5.

        2.    Discrimination

For the purposes of summary judgment, Defendant assumes that Plaintiff can make out a

prima facie case of discrimination.  [ECF No. 38 at 11, 11 n.7].  The parties focus their briefings

---

[11] Although Plaintiff disputes *how* late he was in arriving to his November 8, 2016 shift, he does not dispute that he was, in fact, late.  [SOF Response at 14 (not disputing that he was late); id. at 15 (disputing how late he was but admitting that he was late)].  Plaintiff also does not dispute that he called fifteen to twenty minutes before his shift started, rather than the one hour in advance that was required under Defendant's attendance policy.  [Id. at 15]; see [ECF No. 44-1 at 38 (Plaintiff's deposition testimony in which he acknowledged arriving late and calling fifteen to twenty minutes before his shift to alert Defendant)].

on the September and November 2016 Disciplinary Actions and the Court does the same.  See

[ECF No. 38 at 12–17; ECF No. 43 at 10–11, 11–16].[12, 13]

When a plaintiff has established a prima facie case, the Court infers discrimination, and,

at step two, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason

---

[12] The November 2016 Disciplinary Action was also the focus of the discrimination claims in Plaintiff's complaint.  See [ECF No. 1 at ¶¶ 110, 134].

[13] Plaintiff contends that summary judgment on these counts should be denied because there is "a disputed issue of fact as to whether" the September 2016 Disciplinary Action was rescinded. [ECF No. 43 at 10].  First, this fact is not disputed as Plaintiff, two witnesses for Defendant, and Defendant's records indicate that the September 2016 Disciplinary Action was not rescinded. [ECF No. 39-1 at 76 (Plaintiff's testimony that disciplinary action was not rescinded); ECF No. 39-5 at 3 (Defendant's employment records showing that disciplinary action was not rescinded); ECF No. 39-4 at 46 (deposition testimony of Payne); ECF No. 39-5 at 6–7 (deposition testimony of Tamieka Thibodeaux)].  Only one document stated that the disciplinary action had been rescinded, [ECF No. 44-8 (Defendant's 2017 MCAD position statement)], and Defendant has admitted that this document was incorrect, [ECF No. 30 (Defendant's memorandum in support of its unopposed motion to amend its answer to reflect a correction regarding whether the disciplinary action had been rescinded)].  Even if the fact were in dispute however, it is not material.  Cochran, 328 F.3d at 6. ("A fact is material if its resolution might affect the outcome of the case under the controlling law.").  The record reflects that, even if the September 2016 Disciplinary Action had been rescinded, Plaintiff was still ineligible for promotion until November 2017 due to the November 2016 Disciplinary Action.  [SOF ¶ 137].

It is unclear whether Plaintiff is attempting to argue that, because several disciplinary actions were later rescinded, it demonstrates that the actions themselves were illegitimate.  See [ECF No. 43 at 14].  Plaintiff has not, however, disputed the facts surrounding each action, or suggested that he provided the appropriate paperwork or complied with the appropriate policies prior to the disciplinary actions being instituted.  [SOF Response at 13–14 (stating that Plaintiff was not preapproved for his September 19–21, 2016 absence); id. at 18 (acknowledging that Plaintiff was not preapproved for his September 19–22, 2017 absence)].  Based on the record, Plaintiff only provided documentary support for his absences after the fact, and, once Defendant received this support, Defendant rescinded two of the actions.  [Id. at 13 (stating that Plaintiff filed paperwork requesting disability leave after his September 19–21, 2016 absence and after Defendant had issued a disciplinary action); id. at 18 (stating that Plaintiff filed paperwork requesting disability on October 10, 2017, weeks after his September 19–22, 2017 absence and after Defendant had issued a disciplinary action)].  These facts are distinguishable from those cases where baseless disciplinary actions were asserted against a plaintiff as a form of harassment or retaliation.  See Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 40 (1st Cir. 2003) (affirming verdict for plaintiff where defendants issued several baseless disciplinary actions against plaintiff that were later rescinded).

for the adverse action and to produce credible evidence to show that the reason advanced was the real reason. McDonnell Douglas, 411 U.S. at 802–03. To satisfy step two, the defendant must "clearly set forth, through the introduction of admissible evidence, the reasons for" the adverse action. Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160–61 (1st Cir. 1998) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)). "The explanation provided must be legally sufficient to justify a judgment for the [employer]." Id. at 161. If the defendant demonstrates a legitimate reason for its adverse action supported by credible evidence, "the presumption of discrimination drops from the case" and the burden shifts back to the plaintiff to prove that the defendant's stated reasons are pretextual. Id.; Blare v. Husky Injection Molding Sys. Bos., 646 N.E.2d 111, 115 (Mass. 1995) ("An employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons advanced were the real reasons." (quoting Wheelock Coll. v. Mass. Comm'n Against Discrimination, 355 N.E.2d 309, 314 (Mass. 1976))). Defendant has identified and Plaintiff does not dispute the facts underlying the disciplinary actions at issue here. [SOF Response at 12, 14–15]. Defendant has therefore "plainly met its circumscribed burden of production by identifying a nondiscriminatory basis for the" disciplinary actions at step two. Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002).

Step three shifts back to the plaintiff, who "must proffer evidence to establish that [defendant's] non-discriminatory justification is mere pretext, cloaking discriminatory animus." Tobin, 433 F.3d at 105. To survive summary judgment and make a showing of pretext, Plaintiff must "clear two significant hurdles": first, he must refute Defendant's evidence that it was Plaintiff's violations of the attendance policy, not his race, religion, or national origin, that constituted the real reason for the disciplinary actions; second, he must present evidence showing

that Defendant's asserted reasons were pretext masking discrimination.  Id.; see Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 25 (1st Cir. 2015) (noting that, at summary judgment, "a plaintiff must do more than merely 'impugn the veracity of the employer's justification,'" and must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive" of discrimination (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)).

At step three, "Massachusetts . . . discrimination law deviates from federal law in at least one respect: it allows a plaintiff who establishes a prima facie case and 'proves that at least one of the reasons given by the defendant was pretextual' to survive a motion for judgment as a matter of law." Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 n.2 (1st Cir. 2007) (quoting Joyal v. Hasbro, Inc., 380 F.3d 14, 17 (1st Cir. 2004)).  "Even under that more favorable framework, however, an employee only prevails when an explanation has 'no reasonable support in the evidence or is wholly disbelieved (and hence is transparently a pretext).'" Kuznarowis v. Tobey Hosp., 320 F. Supp. 3d 307, 313 (D. Mass. 2018) (quoting Blare, 646 N.E.2d at 116).

Again, Plaintiff does not dispute that he failed to request prior approval for his August 2016 absence (September 2016 Disciplinary Action), [SOF Response at 12], and failed to adhere to the attendance policy in November 2016 (November 2016 Disciplinary Action), [id. at 14–15]; see also [ECF No. 44-1 at 38 (Plaintiff's deposition testimony)].  In order to support his claim that the reasons Defendant provided for the September and November 2016 Disciplinary Actions were pretext, Plaintiff argues that (1) Defendant's discriminatory animus was well established prior to the November 2016 Disciplinary Action; and (2) other supervisors routinely covered for motorpersons who were late, suggesting that Defendant's attendance policy was not uniformly enforced.  [ECF No. 43 at 11, 12].

a.      Discriminatory Animus

Defendant relies primarily on comments made by Samrin, Carvalho, Cyr, and Gonsalves-Byner to support his allegations of discriminatory animus.  [ECF No. 43 at 13].  The Court notes, however, that—while Plaintiff filed repeat complaints about these individuals—the majority of the complained-of conduct took place months before the September and November 2016 Disciplinary Actions.  See [SOF Response ¶¶ 18, 23 (complaints about Samrin's March 2016 conduct, including allegations of sexual harassment and discrimination); id. ¶¶ 35, 37, 38, 40, 41, 43, 44, 45 (complaints about Cyr's May and June 2016 conduct alleging general acrimony); id. ¶¶ 46, 47 (complaints about Cyr, Carvalho, and Gonsalves-Byner that did not allege specific discriminatory statements or conduct); id. ¶¶ 48–49 (complaints about past harassment and discrimination from Samrin, as well as conflicts with Cyr and Carvalho)].  Plaintiff alleges that, at some time in 2016, Carvalho made a discriminatory remark about Muslims and that Cyr repeatedly told Plaintiff to "go back where [he] came from."  [Id. ¶¶ 61–62].

Defendant argues that these comments were evidence of workplace conflict only (e.g., remarks from Cyr and Carvalho about Plaintiff's run times), and that other comments—while discriminatory—were "stray remarks."  [ECF No. 38 at 14; ECF No. 48 at 3].  "A 'stray remark' is a statement that, while on its face appears to suggest bias, is not temporally or causally connected to the challenged employment decision and thus not probative of discriminatory animus."  Barry v. Moran, 661 F.3d 696, 707 (1st Cir. 2011).  "[T]hough such stray remarks may be material to the pretext inquiry, their probativeness is circumscribed if they were not related to the employment decision in question . . . ."  Ortiz-Rivera v. Astra Zeneca LP, 363 F. App'x 45, 47 (1st Cir. 2010) (internal quotation marks and emphasis omitted) (quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001)).  Although several comments made by Carvalho,

Cyr, and Samrin were undoubtedly inappropriate, none of these individuals were involved in the

September or November 2016 Disciplinary Actions, nor were the incidents related to the reasons

for the disciplinary actions, namely Plaintiff's absences or tardiness.  [SOF Response at 11–13

(discussing September 2016 Disciplinary Action); id. at 14–17 (discussing November 2016

Disciplinary Action)]; see Bennett, 507 F.3d at 31 ("Statements made by those who are not

involved in the decisional process 'normally are insufficient, standing alone, to establish either

pretext or the requisite discriminatory animus.'" (quoting Velázquez-Fernández v. NCE Foods,

Inc., 476 F.3d 6, 11–12 (1st Cir. 2007))).

    Plaintiff does not attempt to suggest that Carvalho, Cyr, or Samrin were involved in the

disciplinary actions but argues instead that Payne may have had a discriminatory animus in

implementing the disciplinary actions.  [ECF No. 43 at 14].  Each of Plaintiff's arguments as to

Payne's alleged animus, however, are belied by the record.  For example, Payne testified that she

routinely wrote up disciplinary forms before meeting with individuals who were facing potential

discipline.  [ECF No. 44-4 at 8, 14 (stating that she usually filled out forms before interviews

with employees)].  In addition, she testified that inspectors infrequently covered for

motorpersons who were late and that she had never done so as an inspector nor had she seen

anyone else do so.  [Id. at 16–17].  The Court therefore concludes that "it would be overly

speculative to infer [a discriminatory] animus from the evidence contained in the record" as to

Payne.  Gonzalez, 304 F.3d at 73.

b.      Differential Treatment

    Plaintiff next argues that pretext is evident because other motorpersons were routinely not

disciplined for being late and that inspectors covered for them.  [ECF No. 43 at 16].  "[T]o

demonstrate pretext by 'producing evidence that plaintiff was treated differently from similarly

situated employees,' a plaintiff 'must show that others similarly situated to [him] in all relevant respects were treated differently by the employer.'"   Cham v. Station Operators, Inc., 685 F.3d 87, 97 (1st Cir. 2012) (quoting García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008)).   Plaintiff identified three employees who were not subjected to discipline, including one who was not subjected to discipline in 2016, [ECF No. 43 at 16], but, as noted by Defendant, failed to identify the employees' race, religion, or national origin, [ECF No. 48 at 6; ECF No. 44 ¶ 46].   Nor has Plaintiff provided facts about each incident, such as whether the employees called one hour before arriving late or whether they were late on a run or for a shift, which would allow the Court to evaluate whether he was treated differently from others that were similarly situated. [ECF No. 48 at 6; ECF No. 44 ¶¶ 46–47].[14]

"[T]he ultimate burden . . . is on [Plaintiff] to persuade a reasonable fact finder that there is a similarly situated employee who is not a member of [his] protected class who was treated differently than [him]."   Goldstein v. Brigham & Women's Faulkner Hosp., Inc., 80 F. Supp. 3d 317, 329–30 (D. Mass. 2015).   "Where the plaintiff bears the burden of presenting similarly situated employees as comparators, and where the defendant has challenged that comparison with credible facts, the plaintiff must demonstrate that 'plaintiff's case and the comparison cases . . . closely resemble one another in relevant facts and circumstances.'"   Id. at 330 (alteration omitted) (quoting Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999)); see Matthews v. Ocean Spray Cranberries, Inc., 686 N.E.2d 1303, 1311 n.6 (Mass. 1997) ("The plaintiff does not carry his burden of demonstrating pretext on a motion for summary judgment where he provides merely 'sketchy evidence lacking a sufficient foundation for a legally relevant

---

[14] Defendant notes that arriving late for a shift is a violation of the attendance policy and results in disciplinary action, while arriving late on a run is not.   [ECF No. 48 at 6 n.7].

comparison' of allegedly similarly situated employees." (quoting <u>Smith v. Stratus Comput., Inc.</u>, 40 F.3d 11, 17 (1st Cir. 1994))).

> c.      Summary

"[I]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination."  <u>Theidon v. Harvard Univ.</u>, 948 F.3d 477, 497 (1st Cir. 2020) (quoting <u>Vélez v. Thermo King De P.R., Inc.</u>, 585 F.3d 441, 452 (1st Cir. 2009)); <u>see</u> <u>Wheelock</u>, 355 N.E.2d at 315 ("[I]f the employee has proved a prima facie case of [] discrimination and the employer gives an explanation for a [] decision which has no reasonable support in the evidence or is wholly disbelieved (and hence is transparently a pretext), the employee should prevail."). Plaintiff has failed to demonstrate that Defendant's proffered reasons for the September and November 2016 Disciplinary Actions were false or a sham, but instead has admitted the facts supporting those disciplinary actions.  Plaintiff has therefore failed to demonstrate that Defendant's "explanation has no reasonable support in the evidence or is wholly disbelieved." <u>Kuznarowis</u>, 320 F. Supp. 3d at 313; <u>see</u> <u>Soto-Feliciano</u>, 779 F.3d at 25.  The Court concludes that Plaintiff has not met his burden at step three of the <u>McDonnell Douglas</u> burden-shifting framework to establish that Defendant's non-discriminatory justifications are mere pretext where he has not presented evidence rebutting its legitimate, non-discriminatory justification.

Although courts must be "particularly cautious" when granting an employer's motion for summary judgment when the determinative issue is pretext, <u>Hodgens</u>, 144 F.3d at 167 (quoting <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 928 (1st Cir. 1983)), the current record does not present a set of facts on which a jury could find in Plaintiff's favor on his

claims for discrimination, and, thus, summary judgment is <u>GRANTED</u> as to Counts I and VI.

<u>See</u> <u>Ocasio-Hernández</u>, 777 F.3d at 4–5 (stating that summary judgment is appropriate if

evidence "demonstrate[s] that the non-moving party will be unable to carry its burden of

persuasion at trial" (citation omitted)).

**B.     Hostile Work Environment Claims Under Title VII and Chapter 151B**

Lastly, Defendant seeks summary judgment on Counts IV, V, IX, and X, arguing that

Plaintiff has failed to provide evidence sufficient to support a retaliatory hostile work

environment claim under either Title VII or Chapter 151B.  [ECF No. 38 at 20].  Plaintiff states

that summary judgment should be denied because Plaintiff has provided evidence demonstrating

that, under the totality of the circumstances, Plaintiff's work environment was hostile.  [ECF No.

43 at 18].

"Both Title VII and chapter 151B contain provisions that make it unlawful for employers

to retaliate against persons who complain about unlawfully discriminatory employment

practices."  <u>Noviello v. City of Bos.</u>, 398 F.3d 76, 88 (1st Cir. 2005) (first citing 42 U.S.C.

§ 2000e-3(a); then citing Mass. Gen. Laws ch. 151B, § 4(4)).  "To engage the gears of either

statute, a plaintiff must show that (i) []he undertook protected conduct, (ii) []he suffered an

adverse employment action, and (iii) the two were causally linked."  <u>Id.</u>  "[U]nder Massachusetts

law as under Title VII, subjecting an employee to a hostile work environment in retaliation for

protected activity constitutes an adverse employment action (and, thus, triggers the statutory

prophylaxis)."  <u>Id.</u> at 91.  Defendant does not contest that Plaintiff engaged in protected conduct.

<u>See</u> [ECF No. 38 at 20–24].

Assessment of "whether a work environment is hostile requires a fact-specific analysis of

the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 243 (D. Mass. 2019) (quoting Thompson, 522 F.3d at 180)).  "[T]he trier of fact [must] assess the matter on a case-by-case basis, weighing the totality of the circumstances." Noviello, 398 F.3d at 94 (citing Lipsett v. Univ. of P.R., 864 F.2d 881, 898 & n.18 (1st Cir. 1988)).  For a plaintiff to succeed on a claim of a hostile work environment, "[t]he alleged conduct must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Allard v. Citizens Bank, 608 F. Supp. 2d 160, 166 (D. Mass. 2009) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)).

There are two components to the hostile work environment inquiry: subjective and objective.  Allard, 608 F. Supp. 2d at 166.  For the subjective component, "the plaintiff must demonstrate that []he actually perceived the environment to be hostile or abusive as a result of the defendant's conduct." Id.  For the objective component, a plaintiff must demonstrate that the "alleged conduct was sufficiently severe or pervasive that a reasonable person would perceive the environment to be hostile or abusive." Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993)).

"[R]udeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Noviello, 398 F.3d at 92 (citing Manatt v. Bank of Am., 339 F.3d 792, 803 (9th Cir. 2003)).  "[O]nly those actions, directed at a complainant, that stem from a retaliatory animus . . . may be factored into the hostile work environment calculus." Id. at 9; see Alvarado v. Donahoe, 687 F.3d 453, 459 (1st Cir. 2012) ("[A]lleged retaliatory actions against an employee must bear a causal connection to some protected conduct in order to establish a prima facie claim that rests on a hostile work environment theory."); Gourdeau v. City of Newton, No.

13-cv-12832, 2016 U.S. Dist. LEXIS 126485, at *4 (D. Mass. Sep. 16, 2016) ("[A]ny causal relationship is based only on [plaintiff's] speculation not on personal knowledge. [Plaintiff's] speculation is not evidence."). The Court will therefore limit its review to those incidents that demonstrate a clear causal connection between Plaintiff's complaints and harassment.[15]

"[T]o successfully establish a claim of unlawful retaliation there must be, 'at a minimum, . . . competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged . . . .'" Alvarado, 687 F.3d at 459 (quoting Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994)). Plaintiff reported that, after he had complained about Samrin, on several occasions she stared at him and said "someone is trying to get me in trouble over here," referring to Plaintiff. [ECF No. 39-3 at 21]. Carvalho, Plaintiff's supervisor, also made a comment to Plaintiff about the Samrin complaint, telling Plaintiff, "I hear[d] about you. I don't appreciate a man who treat[s] a woman the way you treated [Samrin]." [ECF No. 44-1 at 27]. Plaintiff also reported that Carvalho confronted him after learning that Plaintiff had made a complaint about Carvalho, and, with other employees present, told Plaintiff to stop making false allegations about him. [SOF ¶ 60]. Plaintiff references other conduct involving Carvalho that may also have stemmed from his objections to Plaintiff's report about Samrin. See [ECF No. 39-3 at 23 (August 2016 letter to Defendant from Plaintiff's attorney, outlining incidents with Carvalho)]; Cochran, 328 F.3d at 6 (stating that courts should indulge reasonable inferences in favor of the non-moving party).

_____

[15] The Court has already determined that Plaintiff has not provided evidence of a causal connection between the September and November 2016 Disciplinary Actions and his complaints and so omits reference to these actions for the purposes of its hostile work environment analysis. See supra Section III.A.1; Alvarado, 687 F.3d at 460 (excluding from retaliatory hostile work environment analysis those events that had already been deemed non-retaliatory).

As for Cyr, Plaintiff testified that Cyr and Samrin were friends, and that Cyr knew that Plaintiff had made complaints about her.  [ECF No. 44-1 at 41 (Plaintiff's deposition transcript, in which Plaintiff stated that Cyr was friends with Samrin and knew about the complaints against her)].  Cyr also plainly knew about Plaintiff's complaints against him since they met with a supervisor on several occasions to discuss the complaints.  [SOF ¶¶ 36, 42].  While it is less clear that each altercation with Cyr—including those that involved threats of violence—stemmed from these complaints, the Court "indulg[es] all reasonable inferences in [Plaintiff's] favor."  Cochran, 328 F.3d at 6.  With regard to Gonsalves-Byner, Plaintiff reported that she once threatened to "punch [Plaintiff] hard without mercy" if he complained again.  [SOF ¶ 56].  In addition, Plaintiff testified that, when he first met with her, she said she had heard about him and that he was a "troublemaker."  [ECF No. 44-1 at 31].  Again, from Plaintiff's testimony this comment seemed to be connected to Plaintiff's late arrival times on runs, but drawing a reasonable inference in Plaintiff's favor, the comment may have been specific to Plaintiff's complaints about Samrin or Cyr.  See Cochran, 328 F.3d at 6.  Finally, Plaintiff also reported that a female employee, Jolandetta, once threatened to hit him for making a complaint about Samrin.  [ECF No. 39-3 at 26].

Plaintiff's repeated complaints about harassment support a finding that he found the conduct subjectively hostile.  Allard, 608 F. Supp. 2d at 166.  As for the objective component, although some of these incidents appear minor (e.g., Samrin staring at Plaintiff), "a series of minor retaliatory actions may, when considered in the aggregate, satisfy the McDonnell Douglas prima facie 'adverse action' requirement . . . ."  Alvarado, 687 F.3d at 458–59.  Here, minor incidents are combined with more aggressive incidents involving threats of violence, suggesting severe harassment.  In addition, multiple coworkers referenced Plaintiff's complaints, suggesting

that the conduct was pervasive.  "'[T]aunting in relation to' an internal discrimination charge and 'open and direct hostility clearly based on protected status' are evidence of hostile work environment and retaliatory harassment."  Noviello, 398 F.3d at 93–94 (first citing Marrero v. Goya of P.R., Inc., 304 F.3d 7, 26 (1st Cir. 2002); then citing Oncale, 523 U.S. at 80).  Where, as here, individuals physically threatened Plaintiff and repeatedly criticized and harassed him in connection with his complaints, Plaintiff has raised sufficient evidence to allow a trier of fact to determine that, considering the totality of the circumstances, the conduct was objectively severe and/or pervasive.  As a result, "the evidence in this case, viewed in the light most favorable to the plaintiff, would permit—although certainly not compel—a reasonable jury to find that the plaintiff was subjected to a retaliation-based hostile work environment."  Noviello, 398 F.3d at 93.  Summary judgment as to Counts IV, V, IX, and X is therefore DENIED.

## IV.    CONCLUSION

Accordingly, Defendant's motion for summary judgment, [ECF No. 37], is GRANTED in part and DENIED in part.  Summary judgment is GRANTED as to Plaintiff's retaliation claims, Counts II, III, VII, and VIII, and discrimination claims, Counts I and VI.  Summary judgment as to Plaintiff's retaliatory hostile work environment claims, Counts IV, V, IX, and X, is DENIED.  In addition, Plaintiff's motion to strike, [ECF No. 45], is DENIED as moot.

**SO ORDERED.**

September 3, 2020                                             /s/ Allison D. Burroughs
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE